### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIMOTHY JONES, on behalf of himself and all others similarly situated<br><br>*Plaintiff(s),*<br><br>*-against-*<br><br>MERCEDES-BENZ MANHATTAN, INC., and JOHN DOES 1-25<br><br>*Defendant(s).* | Civil Case No.:_____<br><br>**CIVIL ACTION**<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff , TIMOTHY JONES (hereafter referred to as "Plaintiff"), on behalf of himself by and through his attorneys, JONES, WOLF & KAPASI, LLC, hereby bring this complaint against MERCEDES-BENZ MANHATTAN, INC., and John Does 1-25, their employees, agents, and successors (hereinafter referred to as "Defendants") and alleges as follows:

### PRELIMINARY STATEMENT

1.    This action is also brought by Plaintiff, on his behalf, as well as other employees similarly situated, against Defendants for alleged violations of the New York Labor Law (NYLL), arising from Defendants' various willful and unlawful employment policies, patterns and/or practices (See Exhibit A for Consent to Become Party Plaintiffs by Jones).

2.    Plaintiff further alleges, on behalf of himself, and all others similarly situated, that pursuant to New York Labor Law § 195, § 198 and 12 New York Codes, Rules and Regulations §§ 146 ("NYCRR") that they are entitled to recover from the Defendants:  (1) up to five thousand dollars ($5,000) per putative Class Member for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (2) up to five thousand dollars ($5,000)

per putative Class Member for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day, (3) 9% simple prejudgment interest provided by NYLL; (4) post-judgment interest; and (5) attorney's fees and costs.

3. Plaintiff brings this action for his individual claims for: breach of contract, unjust enrichment and failure to pay earned commissions related to Plaintiff's employment at Defendant's Mercedes Benz automobile dealership in Manhattan, NY.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a), as such claims are so related in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5. Plaintiff, Timothy Jones ("Jones") is an individual residing in the state of New Jersey.

6. Mercedes-Benz Manhattan, Inc. is a Delaware Corporation authorized to do business in New York with its principal place of business located at 770 11th Avenue, New York, NY 10019.

7. Plaintiff alleges that the damages sought exceed $75,000 exclusive of any attorneys' fees, costs, expenses and interest.

8. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PARTIES

9.  Jones is an individual domiciled and residing in Wyckoff, New Jersey in Bergen County.

10. Mercedes-Benz Manhattan, Inc. is a Delaware Corporation authorized to do business in New York with its principal place of business located at 770 11th Avenue, New York, NY 10019.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

11. Plaintiff brings claims, on behalf of himself, and all others similarly situated, for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all employees who did not receive time of hire notices and other requisite wage notices by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

12. All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

13. The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, upon information and belief, there are more than forty (40) members of the Class.

14. Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the

Class in separate actions. All the Class members were subject to the same corporate practices of Defendants of failing to provide proper wage notice and wage statements to employees.

15. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented defendants in wage and hour cases.

16. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not

parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

17. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

18. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)  Whether Defendants employed Plaintiff and the Class within the meaning of the New York law;

b)   What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

c)  Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiffs and the Rule 23 Class's start of employment and/or or timely thereafter; and

d)   Whether Defendants provided to Plaintiff and Class members proper wage statements with each payment of wages as required by New York Labor Law.

## FACTUAL ALLEGATIONS

19. Defendants committed the following alleged acts knowingly, intentionally and willfully against the Plaintiff, and the Class.

20. Upon information and belief, Defendants failed to provide Plaintiff and similarly situated employees with Time of Hire Notice reflecting rates of pay, frequency of pay, and payday as required by New York Labor Law § 195.

21. Defendant filed a certificate of assumed name stating that it was doing business under the assumed name "smart center Manhattan" on December 10, 2007.  See Exhibit B attached hereto.

22. Defendant failed to provide the "doing business as" name on wage notices, if any, provided to its employees in violation of New York Labor Law §195.

23. Upon information and belief, Defendants failed to provide Plaintiff and similarly situated employees with paystubs that list employee's name, employer's name, employer's "doing business as" name, employer's address and telephone number, employee's regular hourly rates of pay, employee's overtime rates of pay, the number of regular hours worked, the number of overtime hours worked, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day as required by New York Labor Law § 195.

### Plaintiff's Hiring and Compensation

24. Plaintiff was hired as the finance director for Defendant's automobile dealership in Manhattan, NY (the "Dealership") on October 17, 2013.

25. Plaintiff's start date of employment was November 1, 2013.

26. Pursuant to the terms of his employment agreement, attached hereto as Exhibit A, Plaintiff reported to General Sales Manager Thomas Shanley.

27. As finance director, Plaintiff was in charge of managing and overseeing the entire finance division of the Dealership.

28. During the time of his employment, Plaintiff oversaw at least four finance managers that reported directly to him.

29. During the time of his employment, Plaintiff managed and oversaw the entire finance department at the Dealership.

30. Pursuant to the employment agreement, Plaintiff was to be compensated in the amount of $16,667.00 per month for the months of November and December 2013. A copy of said agreement is annexed hereto as, <u>Exhibit A</u>.

31. Thereafter, Plaintiff was to be a paid a $200,000 per year salary, *plus* commissions based on the performance of the finance department. *See,* <u>Exhibit A</u>.

32. Specifically, the employment agreement states "Your salary will be paid bi-monthly (15th & month end) and your commissions will be paid monthly on the 15th of every month."

33. As set forth in the employment agreement, Plaintiff was entitled to bi-monthly payments of salary as well as a monthly commission payment.

34. Plaintiff's commission payment plan is referred to herein as the "Pay Plan".

35. During the time of his employment at the Dealership, Plaintiff was never paid a commission payment despite due demand for the same.

36. During the time of Plaintiff's employment, finance managers that Plaintiff supervised were paid commissions in addition to salary.

37. Each of the finance managers working under Plaintiff were paid more in salary and commissions than that was paid to Plaintiff.

38. Plaintiff was paid a salary of $200,000 or $16,667.00 per month but was never paid commissions.

39. Plaintiff was entitled to at least 2.5% of all revenues generated by the finance department that he was overseeing.

40. In 2014, the finance department of the Dealership generated at least $6,000,000 in revenue.

41. From January 1, 2015 through Plaintiff's last month of employment in May 2015, the finance department of the Dealership generated at least $2,000,000 in revenue.

42. Other finance managers that were junior to Plaintiff did, in fact, receive commissions based on the revenues generated by the finance department.

43. Other finance managers that were junior to Plaintiff received more compensation than Plaintiff even though Plaintiff was their supervisor.

### Plaintiff's Management of the Finance Department and Questionable Practices of the Dealership

44. Plaintiff has worked in the retail automobile industry for close to 30 years.

45. Plaintiff has worked as finance director at automobile dealerships for approximately 24 of those 30 years.

46. He was paid a commission in addition to a base salary at each and every one of his previous finance director roles.

47. Automobile dealerships including the defendant Dealership regularly engage in the practice of paying commissions to employees in the finance department based on the revenues generated by the department.

48. Plaintiff's many years of experience as a finance director made him a desirable candidate for the finance director position at the Dealership.

49. During his interview with Defendant, represented by General Manager Thomas Shanley, Plaintiff's incentive Pay Plan was discussed at length and was a key component of the negotiations.

50. During and subsequent to the interview, it was agreed by Plaintiff and Defendant that Plaintiff would be paid at least 2.5% of the gross commissions generated by the finance department of the dealership.

51. After being hired, Plaintiff oversaw a reorganization of the finance department and its policies and practices.

52. Plaintiff implemented policies to ensure that the department was operating efficiently, profitably and in compliance with the necessary laws.

53. In 2014, the finance department of the Dealership generated at least $6,000,000 in revenue compared to generating approximately $4.5 million in revenue for 2013.

54. From January 1, 2015 through Plaintiff's last month of employment in May 2015, the finance department of the Dealership generated at least $2,000,000 in revenue for the partial year.

55. Plaintiff noticed troubling behavior and practices at the Dealership after the commencement of his employment.

56. The Dealership engaged in a pattern and practice of back dating lease and finance contracts in order to reach monthly sales and lease targets.

57. If the Dealership met or exceeded the monthly sales and lease targets, it would be eligible to receive lucrative bonuses and other compensation from Mercedes-Benz USA, the manufacturer of the vehicles sold by the Dealership.

58. In order to qualify for the bonuses, the Dealership, through its sales manager and ownership, engaged in the fraudulent and illegal backdating of sales and lease contracts.

59. The backdated sales and lease contracts would make it appear that the vehicles were sold in a particular month in order to qualify for the monthly bonuses.

60. In actuality, the customers did not enter into the contracts or take possession of the vehicles in the designated month.

61. As a result, the Dealership was defrauding Mercedes-Benz USA and its customers by reporting false sales and leases.

62. As a direct result of Defendant's conduct, manufacturer warranties and extended warranties purchased by customers of the Dealership started on the backdated contract date instead of the date the customer took possession of the vehicle.

63. As a direct result of Defendant's conduct, manufacturer warranties and extended warranties purchased by customers of the Dealership started on the backdated contract date instead of the date the customer took possession of the vehicle, causing the consumer to pay for a warranty before actually receiving the the automobile.

64. As a direct result of Defendant's conduct, the start date of a customer's lease began on the backdated contract date instead of the date the customer took possession of the vehicle.

65. As a direct result of Defendant's conduct, the start date of a customer's lease began on the backdated contract date instead of the date the customer took possession of the vehicle,

causing the true length of the lease to be shorter than the amount of time the automobile was in the possession of the consumer.

66. Additionally, Plaintiff noticed that sensitive customer information including social security numbers, bank account numbers, routing numbers, addresses and other personally identifying information was left unprotected and in plain sight on the Dealership showroom floor.

67. Plaintiff instructed staff that this practice put sensitive customer information at risk and should not continue.

68. Plaintiff reported these issues to General Sales Manager Thomas Shanley on multiple occasions both verbally and by way of e-mail.

69. Thomas Shanley and the Dealership were resentful that Plaintiff sought to change the longstanding practices of backdating sales and lease contracts because it would directly impact their ability to meet or exceed the monthly sales and lease goals.

70. Thomas Shanley and the Dealership were resentful that Plaintiff sought to instill procedures to safeguard sensitive customer information because it would slow down the sales process.

71. As a result, Shanley and the Dealership engaged in a campaign of publicly undermining Plaintiff's authority as finance director such that it created a hostile work environment in which Plaintiff was unable to perform his duties as set forth in further detail below.

72. Shanley and the Dealership engaged in the practice of denying Plaintiff commissions on revenues generated by the finance department under his direction.

73. As finance director, one of Plaintiff's job responsibilities was to oversee the Dealership's finance department and staff which consisted of finance managers.

74. Plaintiff was also responsible for recruiting and training of finance managers to serve in the finance department.

75. Thomas Shanley regularly undermined Plaintiff's authority by humiliating him in meetings in front of Plaintiff's staff, hiring individuals to serve in the finance department without consulting Plaintiff and cutting plaintiff out of key decisions concerning the finance department.

76. Upon information and belief, Thomas Shanley was having a romantic relationship with Theresa Ingannamorte, who was employed in the finance department.

77. As a show of favoritism to Ms. Ingannamorte and in an effort to undermine Plaintiff's authority, Mr. Shanley unilaterally decided to enroll Ms. Ingannamorte in Finance and Insurance (F&I) school without consulting with Plaintiff.

78. As a show of favoritism to Ms. Ingannamorte and in an effort to undermine Plaintiff's authority, Mr. Shanley unilaterally decided to hire Ms. Ingannamorte as a finance manager without consulting with Plaintiff or seeking his input.

79. Ms. Ingannamorte was placed in the finance department on or about June 2014 by Mr. Shanley without consulting Plaintiff.

80. Shortly after starting her position in the finance department, Ms. Ingannamorte regularly challenged, second guessed and undermined Plaintiff in front of the entire finance department.

81. At an F&I meeting with Mr. Shanley and the finance team, Ms. Ingannamorte publicy embarrassed and ridiculed Plaintiff's management style and threw him under the bus.  Mr. Shanley said nothing.

82. Due to her personal and alleged romantic relationship with Thomas Shanley, Ms. Ingannamorte did not fear any repercussions for her actions.

83. In fact, Mr. Shanley encouraged Ms. Ingannamorte's behavior while publicly undermining Plaintiff's authority.  Mr. Shanley regularly sided with Ms. Ingannamorte against Plaintiff.

84. Under Plaintiff's leadership, the finance department was generating record-high revenues for the dealership.

85. Upon information and belief, the finance department revenues for 2013 were between $4,000,000 and $4,500,000.

86. Upon information and belief, the finance department revenues for 2012 were less than that of 2013.

87. In other words, Plaintiff's management of the department resulted in at least $1,500,000 of increased revenue to the dealership in 2014.

88. Despite this, Plaintiff was ostracized and denied payment under his Pay Plan.

89. Plaintiff repeatedly asked to be paid commissions pursuant to his Pay Plan but was denied at every turn.

90. Due to Defendants' actions, Plaintiff was no longer able to effectively perform his duties for the Dealership.

91. Mr. Shanley's deliberate actions created a working environment that was so intolerable, difficult, unpleasant and impossible to work in that Plaintiff felt he had no choice but to resign from his position in May of 2015.

## COUNT I

### Violation of New York Labor Law—Time of Hire Wage Notice Requirement
### Brought on behalf of Plaintiffs and the Rule 23 Class against all Defendants

92. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

93.  The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

94.  Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on his or her first day of employment.

95.  Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to each Plaintiff even after the fact.

96.  Due to Defendants' violations of New York Labor Law, each putative Class Member is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT II

### Violation of New York Labor Law—New York Pay Stub Requirement
### Brought on behalf of Plaintiffs and the Rule 23 Class against all Defendants

97.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

98.  The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL §195-3.

99. Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each putative Class Member, and did not provide a legally compliant paystub on or after each putative Class Member's payday.

100.     The paystubs provided by Defendants failed to list, amongst other things, the type of pay (i.e. hourly or salary), regular hourly rates of pay, overtime rates of pay, the number of regular hours worked and the number of overtime hours worked applicable to the putative Class Members.

101.     Due to Defendants' violations of New York Labor Law, each putative Class Member is entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each putative Class Member together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).

## COUNT III
## PLAINTIFF'S INDIVIDUAL CLAIM FOR:
## BREACH OF CONTRACT

102.     Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

103.     Defendant breached the Agreement by failing to make payments to Plaintiff pursuant to the terms set forth in the employment agreement.

104.     Defendant breached the Agreement by failing to make payments to Plaintiff pursuant to the Pay Plan.

105.     Plaintiff has suffered damages in an amount to be determined at trial but of no less than $75,000.00 plus costs and expenses including reasonable attorneys' fees and costs as a direct result of the Defendants' actions, described herein.

## COUNT II
## PLAINTIFF'S INDIVIDUAL CLAIM FOR:

## UNJUST ENRICHMENT

106.    Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

107.    By refusing to pay commissions to Plaintiff, Defendant was enriched at Plaintiff's expense.

108.    It is against equity and good conscience to permit Defendant to retain what is sought to be recovered by Plaintiff as Defendant.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, demands judgment against the DefendantS as follows:

(a)    Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class representative and her attorneys as Class Counsel;

(b)    A declaratory judgment that the practices complained of herein are unlawful under New York Labor Law;

(c)    An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

(d)    Finding that Defendant breached the employment agreement;

(e)    Finding that Defendant breached the "Pay Plan";

(f)    Awarding Plaintiff damages for breach of the employment agreement and Pay Plan in an amount to be determined at trial but such amount alleged is in excess of $75,000;

(g)    Finding that Defendant was unjustly enriched in an amount to be determined;

(h)     Awarding up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

(i)     Awarding up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

(j)     Awarding costs, expenses and disbursements of this action together with reasonable attorneys' and expert fees pursuant to NYLL §§198;

(k)     Awarding prejudgment and post-judgment fees;

(l)     Awarding Plaintiff costs of this Action, including reasonable attorneys' fees and expenses;

(m)     Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4); and

(n)     Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: January 16, 2019

Respectfully submitted,

*s/ Anand A. Kapasi*
Anand A. Kapasi, Esq.
**JONES, WOLF & KAPASI, LLC**
One Grand Central Place
60 East 42nd Street, 46th Floor
New York, New York 10165
(646) 459 7971 telephone
(646) 459 7973 facsimile
akapasi@legaljones.com

*s/ Joseph K. Jones*
Joseph K. Jones, Esq.
**JONES, WOLF & KAPASI, LLC**
One Grand Central Place
60 East 42nd Street, 46th Floor
New York, New York 10165
(646) 459 7971 telephone
(646) 459 7973 facsimile
jkj@legaljones.com

*Attorneys for Plaintiff*

# Exhibit

# A



Mercedes-Benz Manhattan
Inc.
A Daimler Company

October 17, 2013

Mr. Timothy K. Jones
31 Walthery Avenue
Ridgewood, NJ 07450

Dear Timothy,

This letter is to confirm in writing our offer to you of the position of Senior Finance Manager effective  November 1, 2013.   This position reports to Thomas Shanley, General Sales Manager.  You will be required to work a flexible, five-day-per-week schedule, Monday through Friday between the hours of 9 AM and 7 PM and Saturdays from 9 AM – 5 PM.  Please note that this schedule is subject to change based on the needs of our dealership.

Following are the terms of your employment:

**Salary**
As a full-time, exempt employee, your salary will be a rate of $16.667.00  per month (less all applicable taxes and appropriate benefit deductions) paid bi-monthly (15th & month end) for the months of November and December 2013.

**Monthly Commission and Leadership Bonus**
Effective January 1, 2014 you will be paid a combination of salary and commissions derived from the performance of your area of responsibility and influence.  Your salary will be paid bi-monthly (15th & month end) and your commissions will be paid monthly on the 15th of every month.  Your target earnings will be $200,000.000 USD annually and are inclusive of a yearly Leadership Bonus that may represent up to 7.5% of your targeted yearly earnings.

**Time off and Holidays**
Based on the Company's vacation policy, you are entitled to 16 days vacation and all public holidays named in the annual holiday schedule. Sick leave should not exceed 7 days annually. Based on Company's accrual system your vacation days will be pro-rated for the remainder of 2013 and will total 2.5 days.

**Employee Benefits Program**
You will be eligible to participate in Mercedes-Benz Manhattan Inc.'s Employee Benefits Program in accordance with the normal terms of those programs.  The benefit programs include a comprehensive group medical plan, vision program, dental plan, short- and long-term disability, and a 401K plan. Please contact Human Resources with questions you may have regarding our benefit programs. At the time of acceptance of this offer, you will be provided with a detailed description of the programs and with appropriate enrollment forms for your completion.

Mercedes-Benz is a registered trademark of Daimler, Stuttgart, Germany.

*Sales, Service, Parts & Body Shop*
770 11th Avenue
New York, NY 10019
Phone (212) 629-1600
Fax (212) 760-0663

*Sales*
430 Park Avenue
New York, NY 10022
Phone (212) 629-1666
Fax (212) 593-0024



Mercedes-Benz Manhattan Inc.
A Daimler Company

**Work Authorization / Obligations under IRCA**
You are required by U.S. Law to establish your identity and authorization (Immigration Reform and Control Act of 1986 – IRCA). On your first day of work, please bring appropriate original work authorization documentation as detailed on the reverse side of the I-9 form provided to you.

**Contingency**
**Your employment is conditional upon your satisfying the criteria of the standard drug and background screening.**

Please understand that nothing in this offer letter is intended to create a contract of continued employment, or bind you to a specific period of employment. All employees of the Company are subject to the Employment at Will doctrine, which means either you or the Company may terminate the relationship at any time, with or without advance notice, without limitation.

I would like to take this opportunity to welcome you to Mercedes-Benz Manhattan. We are confident that you will enjoy the challenges and opportunities offered by this position, and hope that this will lead to a successful and rewarding career with us.

**Acceptance of Offer**
Please confirm your understanding, and signify your agreement of the above by returning a signed copy of this letter to the attention of Human Resources.

If you have any questions, please feel free to contact me at 212-629-1612.

Yours sincerely,

Myra S. Conzo
Human Resources Manager

I agree to accept this offer and confirm that I have read and understand the terms and conditions stipulated in the above offer of employment.

_____          _____
Signature                                                        Date

_____
Print Name



Mercedes-Benz is a registered trademark of Daimler, Stuttgart, Germany.

*Sales, Service, Parts & Body Shop*
770 11th Avenue
New York, NY 10019
Phone (212) 629-1600
Fax (212) 760-0663

*Sales*
430 Park Avenue
New York, NY 10022
Phone (212) 629-1666
Fax (212) 593-0024



**Mercedes-Benz Manhattan Inc.**
A Daimler Company

Mercedes-Benz is a registered trademark of Daimler, Stuttgart, Germany.

*Sales, Service, Parts & Body Shop*
770 11th Avenue
New York, NY 10019
Phone (212) 629-1600
Fax (212) 760-0663

*Sales*
430 Park Avenue
New York, NY 10022
Phone (212) 629-1666
Fax (212) 593-0024

# Exhibit

# B

# *STATE OF NEW YORK*

# *DEPARTMENT OF STATE*

I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is a true copy of said original.



WITNESS my hand and official seal of the Department of State, at the City of Albany, on November 29, 2018.

Whitney Clark
Deputy Secretary of State for Business and
Licensing Services

Rev. 11/18

200712140 01

CERTIFICATE OF ASSUMED NAME
Pursuant to General Business Law §130

MERCEDES-BENZ MANHATTAN, INC.
doing business under the assumed name of

## "smart center Manhattan"

The undersigned does hereby certify:

1) The name of the filing entity is **MERCEDES-BENZ MANHATTAN, INC.**

2) MERCEDES-BENZ MANHATTAN, INC is a Delaware Corporation, duly authorized to do business in New York State under the Business Corporation Law, and whose certificate of such authority was filed with the Department of State on October 8, 1981.

3) The assumed name under which MERCEDES-BENZ MANHATTAN, INC, will conduct business is

## smart center Manhattan

4) The principal place of business of MERCEDES-BENZ MANHATTAN, INC. within New York State is 536 West 41st Street, New York, N.Y. 10036

5) The name of the County in which MERCEDES-BENZ MANHATTAN, INC. will conduct or transact business under the assumed name is the County of New York.

6) · The address of each place where MERCEDES-BENZ MANHATTAN, INC. will conduct or transact business under the assumed name within the state is

536 West 41st Street, New York, N.Y. 10036, and,

430 Park Avenue, New York, N.Y. 10022,

each in the County of New York

Dated: December 10 , 2007

**FRANK P. BERENZ**
**Secretary of the Corporation**

— 1 —

200712140 01

Certificate of Assumed Name

of

**MERCEDES-BENZ MANHATTAN, INC.**

2007 DEC 14 AM 7:48

# BLU-39

$ICC$

**STATE OF NEW YORK
DEPARTMENT OF STATE**

**DEC 1 4 2007**

FILED
TAX$ 189953
BY: _____

A804517-4

FILED BY:

BLUMBERG**EXCELSIOR** CORPORATE SERVICES
52 SOUTH PEARL STREET- 2ND FLR.
ALBANY, NY  12207

- 2 -

# *STATE OF NEW YORK*

# *DEPARTMENT OF STATE*

I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is a true copy of said original.



WITNESS my hand and official seal of the Department of State, at the City of Albany, on November 29, 2018.

Whitney Clark
Deputy Secretary of State for Business and Licensing Services

Rev. 11/18

2012-01-18 13:37    MBM GM office    212 629 1450 >>    P 3/5

20120118U    67

New York State Department of State
Division of Corporations, State Records & Uniform Commercial Code
One Commerce Plaza, 99 Washington Avenue
Albany, NY 12231
www.dos.state.ny.us

# CERTIFICATE OF AMENDMENT
# OF
# CERTIFICATE OF ASSUMED NAME
# OF

Mercedes-Benz Manhattan, Inc.

*(Insert Name of Entity)*

Under Section 130 of the General Business Law

**FIRST**: The name of the entity is: Mercedes-Benz Manhattan, Inc.

**SECOND**: *Foreign entities only.* If applicable, the fictitious name the entity agreed to use in New York State is:

**THIRD**: If the name of the entity is different on the last Certificate of Assumed Name or Certificate of Amendment of Certificate of Assumed Name, the previous name of the entity is:

**FOURTH**: The entity was formed or authorized under (indicate law):

- ☑ Business Corporation Law
- ☐ Education Law
- ☐ Insurance Law
- ☐ Limited Liability Company Law
- ☐ Not-for-Profit Corporation Law
- ☐ Revised Limited Partnership Act
- ☐ Other (specify law)

**FIFTH**: The present assumed name is Smart Center Manhattan

**SIXTH**: The date the original Certificate of Assumed Name was filed is: 12/14/2007

**SEVENTH**: The date, if applicable, the last Certificate of Amendment of Certificate of Assumed Name was filed is:

**EIGHTH**: The following change(s) are being made (check the appropriate change(s)):

- ☐ **Entity Name:**
  The new name of the entity is:
- ☐ **Assumed Name:**
  The new assumed name is:
- ☑ **Principal Place of Business:**
  The principal place of business is changed to *(include the number and street, city, state and zip code)* : 770 11th Ave, New York, NY 10019

DOS-1626-f-l (Rev. 05/10)    Page 1 of 3

2012-01-18 13:37    MBM GM office    212 629 1450 >>    P 4/5

☐ **County(ies), Added or Deleted, in Which Business Will be Conducted Under the Assumed Name:**

County(ies) Added:                    County(ies) Deleted:

☐ **Address(es) of Specific Business Location(s), Added or Deleted:**

Business Location(s) Added *(include the number and street, city, state and zip code)*:

Business Location(s) Deleted *(include the number and street, city, state and zip code)*:

**INSTRUCTIONS FOR SIGNING:** If a corporation, by an officer; if a limited partnership, by a general partner; if a limited liability company, by a member or manager; or by an authorized person or attorney-in-fact for such corporation, limited partnership or limited liability company. If the certificate is signed by an attorney-in-fact, include the name and title of the person for whom the attorney-in-fact is acting. (Example, John Smith, attorney-in-fact for Robert Johnson, president.)

Anthony Pla Spada
*(Name of Signer)*

Assistant Secretary
*(Title of Signer)*

*(Signature)*

DOS-1626-f-I (Rev. 05/10)

2012-01-18 13:38      MBM GM office      212 629 1450 >>      P 5/5

201201180   67

RECEIVED 2012 JAN 18 AM 11: 7

# CERTIFICATE OF AMENDMENT
## OF CERTIFICATE OF ASSUMED NAME
### OF

Mercedes-Benz Manhattan, Inc.

*(Insert Name of Entity)*

Under Section 130 of the General Business Law

Filer's Name: Mercedes-Benz Manhattan, Inc.

Address: 770 11th Ave

City, State and Zip Code: New York, NY 10019

*Note:* This form was prepared by the New York State Department of State. You are not required to use this form. You may draft your own form or use forms available at legal stationery stores. The Department of State recommends that all documents be prepared under the guidance of an attorney. The certificate must be submitted with a $25 fee. The Department of State also collects the following, additional, county clerk fees for each county affected by the amendment in which a **corporation** does or transacts business: $100 for each county within New York City (Bronx, Kings, New York, Queens and Richmond) and $25 for each county outside New York City. All checks over $500 must be certified.

For Office Use Only

2007 1214001 (TR)
A804517 -4 (C)
12/14/07 - NewY

STATE OF NEW YORK
DEPARTMENT OF STATE
FILED   JAN 18 2012
TAX $   272918
BY:

2012 JAN 18 PH 2:59