USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 3/25/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

TIMOTHY JONES, on behalf of himself and all : 
others similarly situated,

                                                Plaintiffs, :

        -against- :    1:19-CV-00472 (ALC)

                                                               :    **OPINION AND ORDER**

MERCEDES-BENZ, MANHATTAN, INC., and : 
JOHN DOES 1–25,

                                             Defendants. :

-----------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

      The Plaintiff in this action, Timothy Jones, has brought claims under New York Labor Law §§ 195 & 198 on behalf of himself and other employees similarly situated, against Mercedes-Benz Manhattan, Inc., and John Does 1-25 (collectively, "Defendants"). (Compl. ¶ 2). Jones has also asserted individual claims against Defendants for breach of contract and unjust enrichment. (Compl. ¶ 3). This Court has jurisdiction over this action under 28 U.S.C. § 1332.

      Defendants now move to dismiss Jones's complaint pursuant to Fed. R. Civ. P. 12(b)(6). (ECF Nos. 17 & 18). Their Motion is GRANTED in part and DENIED in part.

**I. LEGAL STANDARD**

    "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

1

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In "[d]etermining whether a complaint states a plausible claim…[t]he court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Gillespie v. St. Regis Residence Club, New York Inc.*, No. 16-cv-9390, 2019 WL 4747185, at *4 (S.D.N.Y. Sept. 30, 2019) (citing *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam)).

"On a motion to dismiss, a court may consider facts stated in the complaint, any documents attached to the complaint, and any documents incorporated by reference into the complaint. Where the claim is for breach of contract, as is the case here, the complaint is deemed to incorporate the alleged contract by reference because the alleged contract is integral to the claim." *Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 318 (S.D.N.Y. 2012) (internal citations omitted).

## II. BACKGROUND

### A. Factual Background

The following facts are drawn from the Complaint and relevant attached Exhibits, and are construed in the light most favorable to Jones.

On October 17, 2013, the Defendant Dealership, Mercedes-Benz Manhattan, sent Plaintiff, Timothy Jones a letter offering him the job of Senior Finance Manager. (Compl. at 20, ¶ 24). In relevant part, the letter provided that Jones's "salary [would] be a rate of $16,667.00 per month" for his first two months, but "[e]ffective January 1, 2014 [he] [would] be paid a combination of salary and commissions derived from the performance of [his] area of responsibility and influence." The letter further stated that Jones's salary then would "be paid bi-monthly (15th & month end) and [his] commissions [would] be paid monthly on the 15th of every month. [His]

target earnings [would] be $200,000 USD annually and [would be] inclusive of a yearly Leadership Bonus that may represent up to 7.5% of [his] targeted yearly earnings." (*Id.* at 20). The letter also included the following disclaimer:

> Please understand that nothing in this offer letter is intended to create a contract of continued employment, or bind you to a specific period of employment. All employees of the Company are subject to the Employment at Will doctrine, which means either you or the Company may terminate the relationship at any time, with or without advance notice, without limitation.

(*Id.* at 21).

Jones accepted the position and began work on November 1, 2013. As Senior Finance Director, Jones managed and oversaw the Dealership's entire finance division. (*Id.* at ¶ 27). During Jones's tenure as Financial Director, his division thrived, generating at least $6,000,000 in revenue in 2014, and at least $2,000,000 between January and May of 2015. (*Id.* at ¶¶ 40–41, 53–54). Despite these successes, Jones had significant conflicts with his supervisor, Thomas Shanley, and other employees. Shortly after he began his job, Jones learned that the Dealership was engaging in fraud and other misconduct. To qualify for bonuses and other compensation from Mercedes-Benz USA, the Dealership needed to meet certain sales and leasing targets every month. According to Jones, to ensure that these targets appeared met, the Dealership would backdate contracts to make it seem as though more vehicles were sold or leased in a particular month. (*Id.* at ¶ 56–62). Jones also noticed that employees routinely left "sensitive customer information" like customer social security numbers, bank account and routing numbers, and addresses out in plain sight on the Dealership's showroom floor. (*Id.* at ¶ 66).

Jones reported these issues to Thomas Shanley verbally and through email, but to no avail. Shanley and the Dealership generally were "resentful" and subsequently "engaged in a campaign of publicly undermining [Jones's] authority as finance director such that it created a hostile work environment in which [Jones] was unable to perform his duties[.]" (*Id.* at ¶ 71). As part of this

3

campaign, Shanley and the Dealership refused to pay Jones "commissions on revenues generated by the finance department under his direction[,]" despite the terms of his Offer Letter. (*Id.* at ¶72). Eventually, conditions became intolerable, and Jones felt he had no choice but to resign, which he did in May 2015. (*Id.* at ¶ 91).

Jones alleges that throughout the entire course of his employment, he "was never paid a commission payment despite" repeated requests. (*Id.* ¶¶ 35, 89). According to Jones, the four finance managers who reported to him "were paid more in salary and commissions than…[those which were] was paid to [him]." (*Id.* at ¶¶ 28, 36–37).

### B. Procedural Background

On January 16, 2019, Jones filed this suit against Mercedes-Benz Manhattan, Inc. and John Does 1–25 ("Defendants") on behalf of himself and other, similarly situated Dealership employees. (*Id.* ¶¶ 1, 11). His complaint raises both individual and class claims. On behalf of the class, Jones alleges that the Defendants violated New York Labor Law § 195-1(a) and §195-3 by failing to provide their employees with time of hire notices and paystubs that comply with State Law. (*Id.* at ¶¶ 2, 92–101). For the violation of 195-1(a), Jones argues that pursuant to New York Labor Law § 198(1-b), each putative class member is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000. (*Id.* at ¶ 96). For each violation of 195-3, Jones argues that pursuant to New York Labor Law § 198(1-d), each putative class member is entitled to recover from Defendants, jointly and severally, $250 for each workday the violation occurred or continued to occur, up to $5,000. (*Id.* ¶ 101).

On his own behalf, Jones raised claims for breach of contract and unjust enrichment. For his Breach of Contract Claim, he alleged that Defendants refused to pay him commissions, which

4

breached the terms of his Offer Letter, a binding, enforceable contract. (*Id.* ¶¶ 102–105). Similarly, for his Unjust Enrichment Claim, Jones alleged that "[b]y refusing to pay commissions to Plaintiff, Defendant was enriched at Plaintiff's expense." (*Id.* ¶ 107).

Defendants filed a Motion to Dismiss Jones's Complaint in its entirety on August 7, 2019. (ECF Nos. 17–18).

### III. DISCUSSION

#### A. Breach of Contract

To establish a claim for breach of contract under New York law, a plaintiff must allege: (1) the existence of a contract; (2) adequate performance of the contract by plaintiff; (3) Defendant's breach of the contract; and (4) damages. *See Red Fort Capital, Inc. v. Guardhouse Productions, LLC*, 397 F. Supp. 3d 456, 477–78 (S.D.N.Y. 2019). "To establish the existence of a contract, Plaintiff must show that there was 'an offer, acceptance, consideration, mutual assent and intent to be bound.'" *Moore v. Thomson Reuters (GRC) Inc.*, 17 civ. 02111, 2017 WL 4083582, at * 3 (S.D.N.Y. September 14, 2017) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 507 (2d Cir. 2009). Defendants argue that dismissal of Jones's Breach of Contract claim is appropriate for two reasons. First, Defendants argue that the October 2013 Offer Letter Jones relies on is not a binding, enforceable employment agreement and therefore Jones failed to allege the existence of a contract. Second, Defendants contend that even if the Court decides that the Offer Letter is a valid contract, Defendants paid Jones all of the wages he was owed according to the text of the Offer Letter, and therefore, Jones failed to allege adequately any "breach" by Defendants. (ECF No. 18 at 5–7). I consider each of these arguments in turn, concluding ultimately that they are both without merit.

1. **Binding, Enforceable Contract**

Defendants argue that the 2013 Offer Letter cannot be construed as a binding agreement because it contains the disclaimer providing that "nothing in [it] is intended to create a contract of continued employment, or bind [Jones] to a specific period of employment" and further, that Jones, like "[a]ll employees of the Company [would be] subject to the Employment at Will doctrine[.]" (ECF No. 18 at 9).

In support of this argument, Defendants cite several cases from this District and one New York State court decision in which courts held that an offer letter could not form the basis for a breach of contract claim because of disclaimer language. (ECF No. 18 at 9–10) (citing *Moore v. Thomson Reuters (GRC) Inc.*, 17 civ. 02111, 2017 WL 4083582 (S.D.N.Y. September 14, 2017); *Twomey v. Quad/Graphics*, No. 13-cv-1109, 2015 WL 5698002 (S.D.N.Y. Sept. 28, 2015); *Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315 (S.D.N.Y. 2012); and *Barker v. Time Warner Cable, Inc.*, 897 N.Y.S. 2d 668 (N.Y. Sup. Ct. July 1, 2009). Defendants argue that these cases are directly applicable here and support their argument that the 2013 Offer Letter was not a contract because of its disclaimer. But this argument completely ignores critical distinctions between the wording of the disclaimers cited in Defendants' cases and the wording of the disclaimer in Jones's Offer Letter.

The disclaimer language in the Southern District of New York cases cited by Defendants was unambiguous and expressly disavows any intent on the part of the defendant-employers or the plaintiff-employees to rely on the offer letters as employment contracts. For example, in *Moore v. Thomson Reuters (GRC) Inc.*, there were two disclaimers that stated that "nothing in this offer letter should be construed as creating a contract of employment" and "all…terms of employment are subject to change[.]" *Moore*, 2017 WL 4083582, at *3. Likewise, in *Twomey v.*

*Quad/Graphics*, the disqualifying language read: "While we ask you to sign this letter, please do not construe this offer as an employment contract." *Twomey*, 2015 WL 5698002, at *12. In *Cohen v. Avanade*, the letter explained that the compensation plan it offered the plaintiff was "not a contract of employment" and "was subject to change." *Cohen*, 874 F. Supp. 2d at 318. And finally, the relevant offer letter in *Barker* provided that "[t]his letter…is not a contract of employment or a guarantee of employment or compensation." *Barker*, 897 N.Y.S. 2d at *4.

By contrast, the language in this Offer Letter's disclaimer was less encompassing. It does not assert that the Letter is not an employment contract of any kind, but rather that it is not a contract of *continued* employment or one that binds Jones to any *specific* period of time. This court has considered similar offer letter disclaimer language and determined that it "does not mean that the Offer Letter [in question] is not a contract; rather, it means that [Plaintiff-employee] will be an at-will employee 'subject to discharge at any time.'" *Arakelian v. Omnicare, Inc.*, 735 F. Supp. 2d 22, 32 (S.D.N.Y. 2010), quoting *Leibowitz v. Bank Leumi Trust Co. of N.Y.*, 548 N.Y.S. 2d 513, 516 (N.Y. App. Div. 2d Dep't 1989).

In *Arakelian v. Omnicare, Inc.*, former employee-plaintiff, sued her former employer for breach of contract. 735 F. Supp. 2d at 30–31. She alleged, among other facts, that the defendant-employer failed to pay her severance benefits in the amount set forth in its Offer Letter to her. *Id.* at 30l. Omnicare, the defendant-employer, argued that the Offer Letter was not a valid contract because it contained a disclaimer providing that "[w]hile this letter is our commitment to employ you in the previously mentioned position, please understand that it does not constitute a contract or promise of employment *for any specific length of time*." *Id.* at 32 (alteration and emphasis in original). This disclaimer, Omnicare argued, meant that the letter could not be interpreted as a contract at all. *Id.* This court rejected that argument, concluding that the offer letter was a "valid

7

and enforceable contract…albeit a valid and enforceable *at-will* employment contract." *Id.* (emphasis added).

In *Kamdem-Ouaffo v. Balchem Corp.*, this Court considered plaintiff's breach of contract claim arising out of his former employer's failure to pay him his due salary increase and bonus after he allegedly met key performance objectives. No. 17-CV-2810, 2018 WL 4386092, at *12 (S.D.N.Y. Sept. 14, 2018). Part of this claim was based on the terms of the offer letter the employer originally sent plaintiff. Defendants argued that because this offer letter contained a disclaimer, it was never a valid contract. *Id.* at *12–13. The disclaimer provided that "[n]othing in this offer is intended to be, nor should it be, construed as a guarantee that employment or any benefit will be continued for any period of time. Employment is 'at-will,' meaning that you have the right to terminate your employment at any time, with or without cause or notice, and the Company has the same right." *Id.* at *13. Like the defendants in this case, the defendants in *Kamden-Ouaffo* relied on cases like *Moore* and *Barker*. *Id.*

This Court rejected the defendants' argument. It determined that the contract language at issue was far more like the relevant language in *Arakelian* than that in *Moore* or *Barker*. "The disclaimer[,]" the Court wrote, "does not disavow that the Offer Letter is a 'contract,' rather, it solely disavows that the Offer Letter is a contract or agreement for a fixed term of employment." *Id.* This disclaimer, again, addressed the "at-will" nature of the employment and "reference to an employment at will policy does not bar [an] Offer Letter from operating as valid contract." *Id.* (quoting *Broyles v. J.P. Morgan Chase & Co.*, No. 08-CV-3391, 2010 WL 815123, at *3 (S.D.N.Y. Mar. 8, 2010)). Accordingly, the Court concluded that plaintiff had "plausibly pled

8

that he and [his former employer had] entered into a valid and enforceable contract for at-will employment." *Id.* at *13.[1]

The disclaimer in Jones's 2013 Offer Letter is nearly identical to those considered in *Arakelian* and *Kamdem-Ouaffo*, and thus, this Court's analyses in those cases govern here. The disclaimer language in Jones's Offer Letter does not function to invalidate the otherwise contractual nature of the Dealership's Offer Letter. Jones has properly pled the existence of a binding and enforceable contract.

2. **Material Breach**

Defendants argue that even if I conclude that the Offer Letter was an enforceable contract, Jones's Breach of Contract claim should be dismissed because his complaint failed to allege facts that if true, would establish that Defendants materially breached the binding terms of the Offer Letter. (ECF No. 18 at 10–11).

Jones interprets the Offer Letter to guarantee him a yearly salary plus commissions that would be based on the performance of the finance division he would oversee. (Compl. at ¶ 31). Jones also alleges that the details of his commission payments were ironed out in a meeting he had with his supervisor, Thomas Shanley. Jones alleges that at that meeting, it was agreed that Jones "would be paid at least 2.5% of the gross commissions generated by the finance department of the dealership." (Compl. at ¶ 49–50).

Defendants interpret the Offer Letter differently. They argue that the Letter does not guarantee Jones commissions, only target earnings of $200,000, which is a combination of salary and commissions. (ECF No. 18 at 10). Defendants argue that Plaintiff is attempting "to add

---

[1] The Court ultimately concluded that "the breach of contract claim for the salary increase Plaintiff was allegedly owed after meeting key performance objectives fails because Plaintiff has not sufficiently alleged that Defendants *breached* the Offer Letter." *Id.* at *14 (emphasis added).

additional terms and guarantees that are not stated in the Offer Letter" because "[n]othing within the four corners of this document suggests that plaintiff is owed wages in excess of $200,000.00." (ECF No. 20 at 4). Because "[t]he provisions in the offer letter are clear, unambiguous and complete[,]" Defendants argue that the Court cannot consider the alleged commissions conversation Jones had with Shanley because it is inadmissible parole evidence. (*Id.*at 4).

"Under New York law 'the initial interpretation of a contract is a matter of law for the court to decide.' Included in this initial interpretation is the threshold question of whether the terms of the contract are ambiguous." *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London, England*, 136 F.3d 82, 86 (2d Cir. 1998) (citations omitted). Defendants are correct that "where the terms of an agreement are clear and unambiguous, the Court will not look beyond the 'four corners' of the agreement, and parol evidence of the parties' intentions is inadmissible." *Bank of Taiwan New York Agency v. Granite State Ins. Co.*, No. 03 Civ. 0682, 2003 WL 21540664, at *5 (S.D.N.Y. July 9, 2003) (citing *R/S Assoc. v. New York Job Dev. Auth.*, 771 N.E.2d 240, 242 (N.Y. 2002)) ("Unless the court finds ambiguity, the rules governing the interpretation of ambiguous contracts do not come into play"). "An ambiguous term is one that is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Millgard Corp. v. E.E. Cruz/Nab/Fronier-Kemper*, No. 99 Civ. 2952, 2003 WL 22741664, at *3 (S.D.N.Y. Nov. 18, 2003) (quoting *Walk-In Medical Ctrs, Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir. 1987) (citing *Eskimo Pie Corp. v. Whitelawn Dairies, Inc.*, 284 F. Supp. 987, 994 (S.D.N.Y. 1968))).

I do understand the language of the Offer Letter to be clear and unambiguous, but not in favor of Defendants' interpretation. The Letter clearly considers salary and commissions to be independent forms of payment both of which Jones will be entitled to receive. If Defendants are correct that the Letter's inclusion of the phrase "Your target earnings will be $200,000" (the amount Jones was promised in base salary), was meant to indicate that Jones could never earn more than $200,000, then at least one section of the Offer Letter must be disregarded. The "Salary" section of the Letter provides that Jones's "salary will be a rate of $16,667.00 per month[,]" or a little over $200,000 annually. (Compl. at 20). But the Letter also includes a "Monthly Commission and Leadership Bonus" section, which states that "[e]ffective January 1, 2014[,]" two months after Jones's start date, Jones "will be paid a combination of salary and commissions derived from the performance of [his] area of responsibility and influence." *Id.* If Defendants' interpretation of the "target earnings" phrase is accurate, then the Commission and Bonus section of the letter is entirely unnecessary, as Jones could never earn more than the amount of his *base* salary. Either that, or the "base salary" provision of the contract is disingenuous because if Jones earns a certain amount in commissions, the Dealership can cut his salary to ensure that he never earns more than $200,000 a year.

Accordingly, Defendants' interpretation of the Offer Letter would produce "a result that is absurd, commercially unreasonable or contrary to the reasonable expectation of the parties[,]" an outcome that under New York law, courts must seek to avoid. *Atlas Partners, LLC v. STMicroelectronics, Intern. N.V.*, No. 14-cv-7134, 2015 WL 4940126, at *5 (S.D.N.Y. Aug. 10, 2015) (quoting *Greenwich Capital Fin. Prods., Inc. v. Negrin*, 903 N.Y.S. 2d 346, 346 (App. Div. 1st Dep't 2010) (internal quotation marks omitted)). "It is axiomatic under New York law…that the fundamental objective of contract interpretation is to give effect to the expressed

11

intention of the parties," *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (internal quotation marks and citations omitted), and "[t]he best evidence of what parties to a written agreement intend is what they say in their writing." *Greenfield v. Phillies Records, Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002) (quoting *Slamow v. Del. Corp.*, 594 N.E.2d 918, 919 (1992) (internal quotation marks omitted). In this letter/contract, the Dealership wrote separate sections for salary and commissions, outlined the specific way in which commissions, as opposed to salary were earned, and the different payment schedules for each form of payment. This structure indicates that the contract contemplates the potential for Jones to accrue *both* sets of earnings during his employment and in no way expresses that these distinct earnings will be contingent on one another.

Accordingly, in addition to adequately alleging the existence of a contract, Jones too has alleged facts that if true, establish "a material breach." Defendants Motion to Dismiss with respect to Jones's Breach of Contract claim is therefore DENIED.

### B. Unjust Enrichment

Defendants move for dismissal of Jones's Unjust Enrichment Claim on the basis that Defendants paid Jones a salary, a fact which bars him from recovery. (ECF No. 18 at 8).

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Kaye v. Grossman,* 202 F.3d 611,616 (2d Cir. 2000). "However, the law is clear that a plaintiff may not allege that his former employer was 'unjustly' enriched at his expense when the employer compensated the plaintiff by paying him a salary." *Levion v. Societe Generale*, 822 F. Supp. 2d 390, 405 (S.D.N.Y. 2011). When plaintiffs pleading an unjust enrichment claim have been paid a salary, they must allege some facts to suggest that their salary

"did not constitute reasonable value for the services [they] provided to" their employers. *Id.* (dismissing plaintiff's unjust enrichment claim where there is no allegation that plaintiff rendered services to the defendants beyond the scope of his job duties or that the salary he was paid did not constitute the reasonable value of the services he provided to his employer)).

In this case, although Jones was paid a salary, we do not need to get too into the weeds as to whether he also alleged facts suggesting that his salary was not reasonable compensation for the services he rendered as Finance Manager because his Unjust Enrichment Claims suffers from a more fundamental problem, it is duplicative of his Breach of Contract Claim. Unjust enrichment is a quasi-contract theory that "the law creates in the absence of any agreement." *Goldman Metropolitan Life Ins. Co.*, 841 N.E.2d 742, 746 (N.Y. 2005). "A plaintiff may simultaneously allege breach of contract and unjust enrichment in [his] complaint[,]" *Bazak Intern. Corp. v. Tarrant Apparel Group*, 347 F. Supp. 2d 1, 4 (S.D.N.Y. 2004), but "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 516 N.E. 2d 190, 193 (N.Y. 1987); *see also Digizip.com, Inc. v. Verizon Serv. Corp.*, 139 F. Supp. 3d 670, 682–83 (S.D.N.Y. 2015).

Jones alleges that Defendants were unjustly enriched at his expense because they failed to pay him commissions. (Compl. at ¶ 107). But this is the same factual premise as that which supports Jones's Breach of Contract claim. Jones presents no additional facts to distinguish his Unjust Enrichment Claim. The Offer Letter between the parties is a valid, written contract that covers all of the facts underlying Jones's claim for unjust enrichment. As such, Defendants Motion to Dismiss with Respect to this claim is GRANTED.

**C. New York Labor Law ("NYLL") Violations**

The NYLL requires employers to provide their employees at the time of their hiring with a notice stating "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;…the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; [and] the telephone number of the employer…" N.Y. Lab. Law § 195-1(a). Under the NYLL, employers also must "furnish each employee with a statement with every payment of wages," and this statement must list "the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages;…and net wages." N.Y. Lab. Law § 195-3.

Jones alleges that Defendants violated both these provisions of the NYLL. With respect, to § 195-1(a), Jones alleges that Defendants failed ever to provide their employees with notice of the Dealership's "doing business as" name in that they failed to advise their employees that it was conducting business under the assumed named, "smart center Manhattan." (Compl at ¶ 21–23, 93–96). Jones also alleges that Defendants never provided their employees with the detailed paystub information required by § 195-3. (Compl. at ¶ 20, 97–101).

Defendants argue that these NYLL claims should be dismissed because (1) Defendants *did* provide Jones with the wage notices and statements required by § 195-1(a) and § 195-3; and (2) Even if Defendants had failed to provide Jones with the necessary documentation, they would still not be liable as they are entitled to affirmative defenses set forth in N.Y. Lab. Law § 198. (ECF No. 18 at 11–12). Defendants' first argument warrants little attention as it is based on the contention that facts pled by Jones in his complaint are inaccurate. Jones says he never received

14

the required information, and Defendants say he did. This type of argument is inappropriate at the motion to dismiss stage of litigation where I am required to "accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Gillespie*, 2019 WL 4747185, at *4 (citing *Burch*, 551 F.3d at 124).

Turning to Defendants' second argument, § 198-1(b) provides in relevant part that

> In any action…to recover damages for violation of paragraph (a) of subdivision one of section one hundred ninety-five of this article [§195-1(a)], it shall be an affirmative defense that (i) the employer made complete and timely payment of all wages due pursuant to this article or article nineteen or article nineteen-A of this chapter to the employee who was not provided notice as required by subdivision one of the section one-hundred ninety-five of this article [§195-1].

N.Y. Lab. Law § 198-1(b). Section 198-1(d) provides the same affirmative defense for employers in actions where employees are seeking to recover damages for violations of § 195-3. N.Y. Lab. Law § 198-1(d). Defendants argue that because they timely paid Jones all wages due, they are entitled to the affirmative defenses provided by these two provisions. (ECF No. 18 at 11–12).

"An affirmative defense 'may be raised in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint.'" *Contrera v. Langer*, 290 F. Supp. 3d 269, 274 (S.D.N.Y. 2018) (quoting *Chen v. Major League Baseball Props., Inc.*, 798 F.3d 72, 81 (2d Cir. 2015) (internal quotation marks omitted)).

The affirmative defenses raised by the Defendants, however, do not appear on the face of Jones's complaint. Taking the facts Jones alleged as true, as I am required to do in considering a motion to dismiss, Defendants failed to pay Jones commissions that he was contractually entitled to receive. On this set of facts, viewed in the light most favorable to Jones, the affirmative defenses asserted do not apply. Jones has pled facts that, if accepted as true, establish violations of NYLL §§ 195-1(a) & 195-3.

## IV. Conclusion

Defendants' Motion to Dismiss is GRANTED with respect to Jones's Unjust Enrichment claim and DENIED with respect to all other claims raised by Jones in his complaint.

**SO ORDERED.**

Dated: March 25, 2020

    New York, New York

                                       **ANDREW L. CARTER, JR.**

                                       **United States District Judge**